T.C. Memo. 2003-302

UNITED STATES TAX COURT

DONALD G. AND CLAUDIA A. WILLIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6456-02L.                    Filed November 3, 2003

<u>Mark H. Westlake</u>, for petitioners.

<u>Caroline Krivacka</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  This case arises from a petition for judicial review timely filed in response to a notice of determination concerning collection action under section 6330.[1]  The notice of

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

determination relates to petitioners' Federal income tax liabilities for 1992, 1993, 1994, 1995, 1996, and 1997. Petitioners' liability for the underlying taxes, interest, and penalties is not disputed.  The issue for decision is whether respondent's rejection of petitioners' three proposed alternatives to collection constitutes an abuse of discretion.

                        FINDINGS OF FACT

    Some of the facts have been stipulated and are so found.

    At the time of filing the petition, petitioners resided in Lebanon, Tennessee.  Petitioner Donald G. Willis[2] operates a locksmith business as a sole proprietorship.  Petitioner subcontracts much of the locksmith work.  In addition, petitioner derives income from a part-time ministry.  Petitioner Claudia A. Willis is not employed outside the home.

    On January 30, 2001, respondent sent to petitioners a final notice of intent to levy with respect to petitioners' outstanding Federal income taxes, interest, and penalties for 1992 through 1997 (cumulative liability).  On March 1, 2001, respondent received petitioners' timely request for a collection due process hearing.

    After submitting to respondent for consideration certain personal financial information relating to petitioners, on May 9,

---

    [2]  Hereinafter, unless otherwise indicated, references to petitioner in the singular are to petitioner Donald G. Willis.

2001, petitioners' counsel met with a settlement officer from respondent's Appeals Office. Petitioners' counsel requested that respondent allow petitioners to partially satisfy their cumulative liability by means of an installment agreement.

The settlement officer correctly advised petitioners' counsel that, under respondent's policy, an installment agreement would be acceptable only if the payments thereunder would satisfy in full the total amount of the cumulative liability within the applicable periods of limitation, plus any allowable extensions. Petitioners did not offer to make payments to respondent in an amount sufficient, within the applicable periods of limitation plus allowable extensions, to fully satisfy the cumulative liability, which, at that time, totaled approximately $125,000. As a result, respondent rejected petitioners' proposed installment agreement.

On July 17, 2001, petitioner personally met with the settlement officer. At that meeting, petitioner requested that respondent designate the cumulative liability as currently not collectible (i.e., as uncollectible), and the settlement officer considered the revisions petitioner submitted to his financial information. After considering the revisions, the settlement officer concluded that petitioners had disposable monthly income of $348 and that petitioners could afford to make payment to respondent of $180 per month. As a result, the settlement

officer advised petitioners that the cumulative liability could not be classified as currently not collectible.  The settlement officer then suggested to petitioner that petitioners submit an offer in compromise in the amount of $180 per month for 116 months.  Under this suggested offer in compromise, respondent would consider compromising the cumulative liability for a total payment by petitioners of $20,880.

On or about September 5, 2001, petitioners submitted on the appropriate form the above offer in compromise as proposed by respondent's settlement officer.  On September 18, 2001, the settlement officer wrote to petitioners indicating that verification of the financial information petitioners had submitted was required before petitioners' offer in compromise could be reviewed and approved.

During the settlement officer's verification of petitioners' financial information, certain real estate was identified which had not been previously disclosed to respondent.[3]  Petitioners' mobile home in which they resided was located on the real estate.  In 1996, the real estate had been purchased in petitioners' names, using a cashier's check in the amount of $8,750 as part of a $9,000 downpayment toward the $35,000 total purchase price.  In 1998, nominal title to this real estate was transferred by

---

[3]  The information that petitioners had submitted up until that time indicated that petitioners paid rent for the "land" on which the mobile home in which they resided was located.

petitioners to petitioner's mother. Although the warranty deed recording this title transfer reflects consideration of $10,000, petitioner's mother made no such payment to petitioners. Since 1999, the mobile home located on this real estate has been petitioners' primary residence.

Petitioners advised the settlement officer that the real estate belonged to petitioner's mother. Petitioners indicated that petitioner's mother had provided the funds for the 1996 cashier's check used to purchase the real estate. Petitioners submitted to respondent's settlement officer copies of checks and a bank statement in support of this contention. The bank statement reflects a payment by petitioner's mother of $8,750 on August 26, 1996. The bank statement, however, also reflects a deposit of $10,532.33 into the same bank account on that same date.

From the time of purchase in 1996 through the time of the collection due process hearing, petitioners paid the property taxes and mortgage payments relating to the real estate. No rental agreement between petitioners and petitioner's mother was provided, and none appears to exist. On her Federal income tax returns, petitioner's mother did not include rental income or deduct mortgage interest relating to this real estate. Petitioner's mother was not called as a witness in this case.

Also, information obtained by the settlement officer indicated that, just prior to the above 1996 purchase of the real estate, petitioners sold a house in Nashville, Tennessee. Petitioners did not provide to the settlement officer requested information regarding the disposition of the proceeds from the sale of the Nashville house.

Based on valid and unresolved concerns regarding ownership of the real estate on which petitioners' mobile home residence was located, the settlement officer rejected petitioners' offer in compromise of $180 per month and calculated a minimum acceptable offer in compromise from petitioners of $529 per month for 116 months, until a total of $61,364 would be paid. In preparing computations of this new minimum amount for an acceptable offer in compromise from petitioners, the settlement officer used a fair market value for the real estate of $82,300, based upon a 2001 local property tax appraisal. The settlement officer calculated petitioners' net realizable equity in the real estate at $39,840.

Petitioners disputed the settlement officer's decision to consider the equity in the real estate in evaluating their offer in compromise. Petitioners, however, did not submit to respondent's settlement officer information sufficient to resolve the settlement officer's question regarding ownership of the real estate.

On January 17, 2002, the settlement officer prepared an Appeals Case Memorandum sustaining the proposed levy action. On February 19, 2002, respondent issued to petitioners a notice of determination concluding that petitioners' offer in compromise was unacceptable and denying petitioners' request to suspend collection action.

OPINION

Because the underlying tax liability is not in dispute, we review the settlement officer's actions under an abuse of discretion standard. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs when respondent takes action that is arbitrary or capricious, lacks sound basis in law, or is not justifiable in light of the facts and circumstances. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

Petitioners contend that the settlement officer abused his discretion in refusing to designate petitioners' cumulative liability as currently not collectible. Petitioners also contend that the settlement officer abused his discretion in refusing to accept the proposed payments of $180 per month under either an installment agreement or an offer in compromise.

Generally, Appeals officers are to consider alternatives to collection offered by taxpayers in the course of collection due process proceedings. Sec. 6330(c). As indicated, petitioners

proposed three alternatives to collection.  We address each seriatim.

Currently Not Collectible

Generally, currently not collectible (CNC) status may be available when a taxpayer has no ability to make payments. 2 Administration, Internal Revenue Manual (CCH), sec. 5.16.1.1, at 17,803 (2000).  A taxpayer's ability to make payments is determined by calculating the excess of income over necessary living expenses.  2 Administration, Internal Revenue Manual (CCH), sec. 5.16.1.2.1, at 17,804 (2000).  CNC status may be available based on "hardship" if the levy action would prevent the taxpayer from meeting necessary living expenses.

Petitioners submitted to the settlement officer certain personal financial information in support of their request for CNC status for the cumulative liability.  The settlement officer concluded that petitioners had the ability to make monthly payments and that CNC status was not appropriate.  Petitioners do not challenge the settlement officer's conclusion as to their ability to make some payments toward their cumulative liability; indeed, petitioners' proposed offer in compromise, involving payments of $180 per month, would belie any such claim.

Petitioners clearly had some ability to make payments toward the cumulative liability.  As a result, petitioners were not eligible to have the cumulative liability classified as CNC.  We

find no abuse of discretion in the settlement officer's decision that petitioners were not eligible for CNC status.

Installment Agreement

Section 6159 authorizes respondent to consider installment agreements when a taxpayer lacks the current ability to satisfy the full amount of taxes. At the time of the collection due process hearing in this case, respondent maintained a policy of accepting installment agreements only with terms that would result in full payment of all Federal income tax liabilities within the applicable collection periods of limitation. Internal Revenue Manual, sec. 5.14.1.1 (effective Oct. 18, 1999 to Mar. 30, 2002). A 5-year extension of the periods of limitation is permissible when making this determination. Internal Revenue Manual, sec. 5.14.1.7 (effective Oct. 18, 1999 to Mar. 30, 2002).

In light of the amount of petitioners' cumulative liability, an acceptable installment agreement would have required payments of approximately $1,500 per month for the 116 months in the collection periods of limitation. Even with a 5-year extension, payments of more than $1,100 per month would have been required. Petitioners do not dispute their inability to make payments in that amount.

After the notice of determination was issued in this case, respondent changed its policy related to installment agreements. Under respondent's new policy, respondent may allow taxpayers to

enter into installment agreements to pay specific tax periods in full and to have other tax periods designated as CNC. 2 Administration, Internal Revenue Manual (CCH), sec. 5.14.2.2, at 17,529 (effective Mar. 30, 2002). Respondent's new policy, however, still requires that taxpayers borrow upon or liquidate current assets. 2 Administration, Internal Revenue Manual (CCH), sec. 5.14.2.2(1), at 17,529 (effective Mar. 30, 2002). At trial, petitioners' counsel argued that this case was not about abuse of discretion by an individual settlement officer, but rather about an "institutional abuse of discretion" in the application of the policy that respondent used when considering petitioners' proposed installment agreement. Petitioners claim respondent should have treated the cumulative liability as consisting of separate liabilities for each year and should have classified some years as CNC while allowing petitioners an installment agreement for the liabilities for other years.

The settlement officer properly applied the policies applicable when considering petitioners' request for an installment agreement, and we find no abuse of discretion in his action. Further, particularly in light of the unresolved question relating to ownership of the real estate, petitioners have failed to establish that they would qualify for treatment under respondent's new policy. We find no abuse of discretion in

respondent's use in this case of the prior policy for installment agreements.

Offer in Compromise

Section 7122 provides authority for an offer in compromise as an alternative to collection action. An offer in compromise reduces a taxpayer's overall liability. An offer in compromise may be granted for reasons such as doubt as to the actual tax liability, doubt as to collectibility, or for other purposes relating to effective tax administration. Sec. 7122.

As indicated, petitioners do not dispute the amount of the cumulative liability. The proposed offer in compromise was considered on the grounds of doubt as to collectibility. In general, an offer in compromise based on doubt as to collectibility may be accepted where there are substantial questions concerning whether the tax liability will be collected in full and where the offered amount reflects realistic collection potential. 2 Administration, Internal Revenue Manual (CCH), sec. 5.8.1.1.3, at 16,253 (2001).

After reviewing the initial financial information provided by petitioners, the settlement officer suggested that petitioners' proposed offer in compromise of $180 a month for 116 months, for a total of $20,880, appeared acceptable. However, as explained above, the settlement officer's verification of petitioners' financial information uncovered a significant

question regarding ownership of real estate in which an equity interest of nearly $40,000 appeared to exist.  As a result, the settlement officer concluded that petitioners' offer in compromise was not acceptable.

Although petitioners continue to assert that the real estate belongs to petitioner's mother, petitioners failed to provide to respondent's settlement officer certain requested information in support of this assertion.  For example, petitioners failed to provide information relating to the proceeds of the Nashville house that petitioners sold, information that is particularly significant because of the $10,532.33 deposit into petitioner's mother's bank account on the same day that the cashier's check used for part of the downpayment on the real estate was purchased.  Moreover, the information petitioners provided to the settlement officer showed that the real estate was originally titled in petitioners' names, that petitioners transferred title for no consideration, that petitioners lived there, and that petitioners paid the property taxes and mortgage payments.

Generally, when challenging a levy action, taxpayers bear the responsibility of providing relevant information. Rule 142(a).  The information petitioners provided to the settlement officer was insufficient to resolve the question regarding ownership of the real estate.  We find no abuse of

discretion in the settlement officer's determination.  Other arguments made by petitioners that are not specifically addressed have been considered and rejected.

Based on the foregoing,

<u>A decision will be entered for respondent</u>.